## In re LORAX CORPORATION, Debtor.

### Shawn K. Brown, as Trustee for the Lorax Corporation, Plaintiff,

v.

### Phillip Shepherd, as Trustee of the Greenwall Liquidation Trust, Defendant.

Bankruptcy No. 02–48396–DML–11.
Adversary No. 03–4128–DML.

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

Feb. 4, 2004.

See also 295 B.R. 83.

Peter A. Franklin, Doug D. Skierski, William J. Doby, Locke, Liddell and Sapp, Dallas, TX, for Shawn K. Brown, trustee for the Lorax Corp.

Michael S. Truesdale, Diamond McCarthy, Austin, TX, for Phillip Sheperd, trustee for The Greenwall Liquidation Trust.

## CORRECTED MEMORANDUM OPINION

DENNIS MICHAEL LYNN, Bankruptcy Judge.

Before the court is the Motion to Strike Jury Demand (the "Jury Motion") filed by Shawn K. Brown ("Plaintiff"), as trustee for the Lorax Corporation ("Debtor"), in the above-styled adversary proceeding (the "Adversary"), by which Plaintiff asks the court to strike the Jury Demand (the "Jury Demand") filed by Phillip Shepherd ("Defendant"), as trustee of the Greenwall Liquidation Trust, on July 8, 2003. The Jury Motion was filed on July 17, 2003, and Defendant filed his Response to Motion to Strike Jury Demand (the "Jury Response") on July 31, 2003. On August 25 Plaintiff filed a Reply Brief in Support of Motion to Strike Jury Demand (the "Jury Reply"). Also on August 25 Defendant filed a Supplemental Briefing (the "Supplement").

The Jury Motion first received consideration in connection with the court's status conference held regarding Defendant's Motion to Withdraw Reference (the "Reference Motion") as to the Adversary on August 4, 2003. Following that status conference, the parties asked the court to delay consideration of the Jury Motion and the Reference Motion so that the parties might consider other means for resolving their differences.[1]

When recently advised that the parties were unsuccessful in reaching an accommodation, the court set a second status conference on the Reference Motion, together with a hearing on the Jury Motion, for December 19, 2003. Prior to that hearing, Henderson County Property Corporation, the beneficiary of the Greenwall Liquidating Trust (hereafter "HCPC" or "Intervenor"), filed a motion to intervene in the adversary and a brief in support of Defendant's Jury Demand (the "HCPC Brief"). At the December 19 hearing, the court orally granted HCPC's motion to intervene and HCPC participated in the hearing.

At the December 19 hearing the court heard argument on the Jury Motion and took it and the Reference Motion under advisement.[2] This matter is subject to this court's jurisdiction under 28 U.S.C. §§ 1334 and 157.[3] This memorandum con-

---

1. Presumably the clerk's office did not transmit the Reference Motion to the District Court as a result of the requested delay, although Defendants' companion motion asking leave to appeal this court's decision in *Lorax I* (as hereafter defined) was processed and has been ruled upon. Thus, the Reference Motion has only recently been forwarded to the District Court. The timing of consideration of the Reference Motion has not, as a practical matter, been affected by the deferral of its transmission, because the court would have deferred its consideration to facilitate the parties' efforts to settle in any case.

2. On December 19 the court announced that it considered resolution of the Jury Motion dispositive of the Reference Motion. The court, therefore, by separate filing, is submitting its recommendation on the Reference Motion to the District Court based on this memorandum opinion.

3. In *Brown v. Shepherd (In re Lorax Corp.)*, 295 B.R. 83, 88 (Bankr.N.D.Tex.2003), *leave to appeal den.*, No. 4:03–CV–820–Y (N.D.Tex. Dec. 22, 2003) (hereafter *"Lorax I"*), the court determined the Adversary was subject to its core jurisdiction. The issue of whether the bankruptcy court, as opposed to the District Court, may exercise that jurisdiction is dependent on the resolution of the Jury Motion, because the fact that the Adversary is core does not alone deprive Defendant of any right it may have to a jury trial. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (holding that petitioners were entitled to jury trial notwithstanding designation of fraudulent conveyance suit as core proceeding triable by bankruptcy judge).

stitutes the court's findings and conclusions. FED. R. BANKR.P. 7052.

## I. Background

The facts underlying the Adversary are discussed at length in the court's prior *Lorax I* opinion. *See Lorax I,* 295 B.R. at 86–88. The essence of the dispute between the parties is whether a lease of land to Debtor was validly terminated by Defendant prior to the commencement of Debtor's chapter 11 case. The parties agree that Plaintiff, as Debtor's chapter 11 trustee, remains in actual possession of the leased property (Supplement, p. 4, ¶ 8). Defendant and Intervenor, prepetition, had sought in state court to oust Debtor from possession of the leased property (the "State Suit"). The Adversary is the mirror image of the State Suit (HCPC Brief, p. 2, citing *Lorax I,* 295 B.R. at 88). In order to determine whether Plaintiff should retain possession of the leased property, the agreements between Debtor and Defendant's predecessor trustee must be construed and a fact finder must determine whether, under those agreements, Defendant terminated Debtor's interests. By the Jury Demand and the Reference Motion, Defendant seeks to present these issues to the District Court sitting with a jury.

## II. Issue

The sole issue the court must address is whether Defendant is entitled to a jury trial in a dispute over rights to property in the possession of Plaintiff, the chapter 11 trustee.

## III. Discussion

As suggested by the court's statement of the issue presented, resolution of the Jury Motion turns on Plaintiff's possession of the leased property. The parties have focused their attention on whether an action of the sort presented by the Adversary, and by extension the State Suit, would fall within the Seventh Amendment's guaranty of trial by jury of actions entitled to a jury trial under the common law at the time the Seventh Amendment was added to the Constitution. In doing so they have looked to authorities which do not address the significance of a trustee's possession of the property at issue. Upon review of the cases, in particular the Supreme Court's decision in *Granfinanciera,* however, the court concludes that the Jury Motion should be considered in light of the bankruptcy court's traditional power to summarily adjudicate rights to property in its possession.[4] Were the property in Defendants' possession—if Plaintiff were attempting to gain possession of the property for the estate—the court would likely decide the Jury Motion differently.

Under the former bankruptcy act, the jurisdiction of the referee (the functional equivalent of today's bankruptcy judge) over nonbankrupts was limited to two categories: (1) cases in which the third party actually or constructively *consented* to trial before the referee; and (2) cases involving disputes over property which was in the actual or constructive *possession* of the court. *See* 2 COLLIER ON BANKRUPTCY ¶ 23.02[1] (14th ed.1976). If, on the one hand, either of these circumstances existed

---

4. "The jurisdiction which could properly be exercised by referees under the Bankruptcy Act was defined by notions of possession of property.... If property were in the possession of the court ... the bankruptcy court had the jurisdiction to determine the rights and interests in and to that property." 1 COLLIER ON BANKRUPTCY ¶ 3.01[1][b][iv] (15th ed.1994) (footnotes omitted). *See also Katchen v. Landy,* 382 U.S. 323, 336, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (explaining that "bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession").

with respect to a dispute, the referee in bankruptcy could dispose of it summarily.[5] If, on the other hand, a dispute involved a nonbankrupt who did not consent to the referee's jurisdiction and did not involve property in the actual or constructive possession of the bankruptcy court,[6] whatever federal jurisdiction was available by reason of the bankrupt's involvement had to be exercised by the District Court in a plenary proceeding.[7]

Following the passage of 28 U.S.C. §§ 1334 and 157 in the 1984 amendments to the Judicial Code, which were intended to resolve the Constitutional problems posed by an Article I federal court exercising general jurisdiction,[8] some courts equated the scope of core proceedings with the former summary jurisdiction of the bankruptcy referee.[9] This, of course, is not correct. The essential characteristic of the bankruptcy referee's summary jurisdiction under the prior law related to abbreviated procedures. 2 COLLIER ON BANK-RUPTCY ¶ 23.02[2] (14th ed.1976). Those procedures certainly did not contemplate the use of a jury to find facts. *Id.* at ¶ 23.03. But, as *Granfinanciera* made clear, the mere inclusion by Congress of a type of action in the list of core proceedings could not alone deprive a party of its Seventh Amendment right to a jury.[10] Thus there is no equivalence—though there is definitely overlap—between core jurisdiction under present law and the summary jurisdiction exercised by a bankruptcy referee.

■ The 1984 enactments, and the provisions of the Judicial Code which they replaced, were not intended to strip the bankruptcy courts of their ability to deal with disputes which would have been subject to a referee's summary powers under the former bankruptcy act. The adjudication by a court of disputes concerning property in its possession as part of a trust is an exercise of the court's equitable juris-

5. The dispositive significance of possession in establishing summary jurisdiction is clear. *Compare Katchen*, 382 U.S. at 336, 86 S.Ct. 467 (affirming that controversies relating to property over which the bankrupt has actual or constructive possession may be adjudicated by bankruptcy courts in summary proceedings) *and* 2 COLLIER ON BANKRUPTCY ¶ 23.03 (14th ed.1976) (emphasizing the power of a bankruptcy court to act summarily regarding controversies over property in its actual or constructive possession) *with* 2 COLLIER ON BANKRUPTCY ¶ 23.06[1] (14th ed.1976) (setting forth well settled principle that a court of bankruptcy has no jurisdiction to hear and adjudicate in a summary proceeding a controversy regarding property held adversely to the bankrupt estate without the consent of the adverse claimant).

6. Possession of property by the court's officer—here Plaintiff—is equivalent to possession by the court. *See* 2 COLLIER ON BANKRUPTCY ¶ 23.05[2] (14th ed. 1976) ("Property is in the actual possession of the bankruptcy court when and [sic] officer of the court is in actual, *physical* possession of it, whether such officer be a trustee, receiver or other juridical representative.") (emphasis in original).

7. *See generally* 2 COLLIER ON BANKRUPTCY ¶ 23.02[1] (14th ed.1976).

8. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, *passim* (1982). *See also* CONG. REC. STATEMENTS, Bankruptcy Amendments Act of 1984, Pub.L. 101–650 (1984) (amending the bankruptcy statute "to set forth the jurisdiction of the Federal district courts with regard to bankruptcy cases and proceedings").

9. *See generally* 1 COLLIER ON BANKRUPTCY ¶ 3.01 (15th ed.1996). *See also Granfinanciera*, 492 U.S. at 61, 109 S.Ct. 2782.

10. In *Granfinanciera* the Court concluded that the fraudulent transfer action at issue was "not closely intertwined with [the] federal regulatory program" overseen by the bankruptcy court. *Granfinanciera*, 492 U.S. at 54, 64, 109 S.Ct. 2782.

diction.[11] By extension, a matter which is both core under section 157(b)(2) and involves property in the possession of the bankruptcy court is not a matter of which comes within *Granfinanciera's* holding that a third party is entitled receive consideration of its case by a jury.

A review of the pronouncements of the Supreme Court makes it clear that the exercise by the bankruptcy court of this *in rem* jurisdiction may not be thwarted by a demand for a jury. In *Granfinanciera* the court commented on *Katchen:*

> Our holding [in *Katchen*] did not depend, however, on the fact that "[bankruptcy] courts are essentially courts of equity" because "they characteristically proceed in summary fashion to deal with the assets of the bankrupt they are administering." ... Our decision turned, rather, on the bankruptcy court's having *"actual or constructive possession"* of the bankruptcy estate. .... (citations omitted; emphasis added).

*Granfinanciera,* 492 U.S. at 57, 109 S.Ct. 2782. As the Court repeatedly noted in *Granfinanciera,* the question there before the court was whether a party from whom the trustee sought a recovery *to augment* the bankruptcy estate was entitled to a jury trial. *Id.* at 43, 46, 48–49, 109 S.Ct. 2782. In the case at bar, Plaintiff does not seek to recover anything from Defendant. Plaintiff, as trustee, has possession of the leased property; the leased property is held by him as part of the estate. Defendant wishes to take possession of the leased property from the estate.

The distinction between the right to a jury trial of one defending *against* a bankruptcy trustee's claim to recover property as compared to one seeking property *from* the estate is clear. *See, e.g., Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 94–95, 53 S.Ct. 50, 77 L.Ed. 185 (1932); *Katchen,* 382 U.S. at 337–38, 86 S.Ct. 467; *Whitehead v. Shattuck,* 138 U.S. 146, 151, 154–55, 11 S.Ct. 276, 34 L.Ed. 873 (1891). In *Granfinanciera* the court made clear the distinction: "There can be little doubt that fraudulent conveyance actions by bankruptcy trustees ... are quintessentially

---

11. *See* 2 COLLIER ON BANKRUPTCY ¶ 23.03 (14th ed.1976) (explaining that inherent in every court of equity is the incidental and indispensable power and authority to administer the property in its possession). It is no accident that present chapter 11 is the descendant of the "equity receiverships" used to invoke federal jurisdiction in connection with the restructuring of railroad debt in the last half of the 19th century. *See* David A. Skeel, Jr., *Debt's Dominion: A History of Bankruptcy Law in America* (2001), at 48, 105–06. The use of an equity receivership in federal court allowed the exercise of jurisdiction by that court in one proceeding over property held by a railroad in different states. *Id.* at 53. Administration of property in a court's custody through an equity receivership occurred through the exercise of the court's equitable jurisdiction—even if legal questions arose in connection with that administration. Just as it is well settled that administration of an equity receivership involves exercise of a court's equity jurisdiction, so, too, it is well established that a trust is a creature of equity. *See Decker v. Mitchell (In re JTS Corp.),* 305 B.R. 529, 538 (Bankr.N.D.Cal.2003) (agreeing that property of an insolvent corporation may be administered in equity as a trust for the benefit of creditors) and *Bryan v. Welch,* 74 F.2d 964, 970 (10th Cir.1935) (finding that "[a] court of equity has exclusive jurisdiction over trusts"). That the "trust" is statutorily created (here by section 541 of the Bankruptcy Code) does not alter the fact that the trust and the property held by it are subject to the supervising court's equity jurisdiction. This was true under the prior bankruptcy act and was true at the time of passage of the Seventh Amendment. *See generally Granfinanciera,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (analyzing present-day Seventh Amendment right to jury trial *vis-à-vis* recognized right to jury trial in courts of law and equity in late–18th century England); *In re United Button Co.,* 140 F. 495 (D.Del.1906) (tracing history of early jury trial provisions).

suits at common law that more nearly resemble state-law contract claims ... to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to ... the bankruptcy *res.*" *Granfinanciera,* 492 U.S. at 56, 109 S.Ct. 2782. Here, Defendant wants to prove his right to unfettered ownership and possession of what is virtually the entire *res* in this bankruptcy case.[12]

This brings up yet another distinction drawn in *Granfinanciera.* The distribution of the bankruptcy estate—liquidation of assets of the estate or the reordering of the debtor-creditor relationship, *see* 28 U.S.C. § 157(b)(2)(O), is the "public right" exercised by the bankruptcy court through the equitable, Article I jurisdiction granted to it. "Those cases in which Congress may decline to provide jury trials are ones involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to ... [a] specialized court of equity." *Granfinanciera,* 492 U.S. at 55, 109 S.Ct.

2782. In the case before the court, the "public regulatory scheme" would be frustrated were Defendant able to use a claimed right to a jury to divest the reorganization court of its *in rem* authority.

There is certainly precedent that, in a matter involving mixed questions of law and equity, the mere preponderance of equitable issues does not affect a party's right under the Seventh Amendment to a jury trial. *See, e.g., United States v. Williams,* 441 F.2d 637, 644 (5th Cir.1971). It is also true that there is authority for the proposition that a bankruptcy court should defer to the District Court to allow jury trial of those issues which, absent bankruptcy, might be heard by a jury; then the bankruptcy court may exercise its jurisdiction to deal with remaining questions properly within its equitable authority. 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][c][iii] (15th ed. rev.2003) (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095 (2d Cir.1993)).[13]

**12.** Effectively Defendant is asserting a claim to property of Debtor's estate. Plaintiff also asserts a claim to the same property, which Defendant must (as it was attempting to do in the State Suit) extinguish. Plaintiff has possession of the property under color of right. If Plaintiff's claim is so lacking in merit that it does not suffice to bring the leased property within this court's traditional *in rem* jurisdiction, Plaintiff's claim will be disposed of in summary fashion and never reach the stage of being tested by a jury. This is consistent with exercise of the bankruptcy court's summary jurisdiction under the former bankruptcy act. 1 COLLIER ON BANKRUPTCY ¶ 3.01[1][b][iv] (15th ed.1996). *See also* 2 COLLIER ON BANKRUPTCY ¶ 23.04[2] (14th ed.1976) (explaining that a bankruptcy court may go into the merits of the controversy to determine whether or not the bankruptcy court has acquired legitimate actual or constructive possession, including the right to determine the validity of the right of possession of leased premises in the possession of the bankrupt). That Defendant has not filed a proof of claim, so submitting to bankruptcy court jurisdiction, eliminates only

the possibility that this court could hear the Adversary by Defendant's "consent." It does not mean Defendant may escape the court's control over disposition of the estate, an alternative basis for the exercise of this court's equitable jurisdiction recognized in both *Katchen* and *Granfinanciera.*

**13.** *In re Orion,* if good law, is inapposite. In *Orion* the debtor sought to assume a contract by which Showtime Networks, Inc. ("Showtime") was obligated to license and distribute motion pictures. Simultaneously with the motion to assume, the debtor commenced an adversary proceeding seeking damages from Showtime for breach of the agreement. The bankruptcy court authorized assumption of the agreement and ruled that this disposed of the adversary as well. The result of the bankruptcy court's action was a potential recovery from Showtime of $77,000,000. Thus, *Orion,* like *Granfinanciera,* involved augmentation of the estate. This court questions whether the Second Circuit's determination that the bankruptcy court's authority to hear an assump-

The latter methodology may be effective where determination of a legal issue is a prerequisite to the bankruptcy court advancing the reorganization process. It would be at odds with the statutory scheme designed by Congress, however, to filter out from the bankruptcy process all legal issues regardless of how they may arise. In connection with confirmation of a plan, a bankruptcy court may be required to determine, for example, the validity and extent of a lien, *see* Code sections 506(a), 1111(b), 1123(a)(5)(E), 1129(b)(2)(A), 1225(a)(5) and 1325(a)(5); amounts required or other actions necessary to cure and reinstate contracts, *see* Code sections 365, 1123(b)(2), 1129(a)(11); or the "legal, equitable or contractual rights" of a claimant, *see* Code sections 1124(2)(d), 1126, 1129(c)(7) and 1129(a)(8)(B). Yet each of these issues, and many others, could be the subject of a jury demand if Defendant is here entitled to a jury, although none involves seeking an affirmative recovery from a third party. If the bankruptcy court cannot decide these issues as part of its equitable power to oversee the reorganization of a debtor, the plan process could be diffused among a number of courts. Such a result is wholly inconsistent with the Supreme Court's command that reorganization proceed efficiently and expeditiously. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

Nor is plan confirmation the only function performed by the bankruptcy court in which legal issues are determined. A decision under section 363(c)(2) of the Code to permit use of cash collateral or under section 364(d) to provide a senior lien for new debt will require a determination of the extent and, perhaps, validity of a lien.[14] Credit bidding at a sale under section 363(k) is likely to raise the same issues. Claim objections regularly bring into the bankruptcy court issues of, *inter alia,* state law which, but for bankruptcy, would be subject to jury trial. While, if the creditor has filed a claim, the bankruptcy court will have jurisdiction by consent, in chapter 9 and chapter 11, a creditor need not file a proof of claim to be entitled to distributions. *See* Code sections 925 and 1111(a); FED. R. BANKR.P. 3003(b)(1).[15]

The trustee, the debtor or a co-debtor may file a claim entitling a nonfiling creditor to participate in the estate or under the plan in any chapter. *See* Code sections 501 and 901; FED. R. BANKR.P. 3004 and 3005.[16] Surely none of these provisions substitutes for purposes of consent to bankruptcy jurisdiction for the fil-

tion motion would not allow it "to decide a disputed *legal* contract issue," *Orion,* 4 F.3d at 1099 (emphasis in original), should be read broadly. Such a reading of *Orion* would, for example, preclude the bankruptcy court from determining, pursuant to section 365(b)(1)(A) of the Bankruptcy Code, the existence of a default by the *debtor* and requirements for cure.

**14.** The court is aware that in *Wolfe v. First Fed. Sav. & Loan Ass'n of Paragould (In re Wolfe),* 68 B.R. 80 (1986), Judge McGuire held in case of such a determination there is, in fact, entitlement to a jury. The court cannot agree.

**15.** That a debtor lists a creditor's claim as liquidated, not disputed and not contingent does not mean it is exempt from objection. Even if the debtor thereby "waives" any objection (a doubtful proposition), other parties may object. *See* Code section 502.

**16.** A secured creditor, in fact, need not file a claim to maintain its rights as a lienholder. *See* FED. R. BANKR.P. 3002(a). *See also Universal Am. Mortgage Co. v. Bateman (In re Bateman),* 331 F.3d 821, 827 (11th Cir.2003) (explaining that filing a proof of claim is not mandatory for secured creditors).

ing by the creditor itself of a proof of claim; just as surely, the bankruptcy court nevertheless has jurisdiction to determine whether such claims are valid—against the estate or under a plan. Indeed, just as is true in the case at bar, determination of a claim not pressed by the creditor disposes only of the creditor's rights against the *res*. Because it is the *res* which is implicated, rather than property of the claimant, the bankruptcy court has jurisdiction to decide the claim.

■ As the Supreme Court recognized in *Granfinanciera*, enactment of the Bankruptcy Code was "clearly intended to make the reorganization process more efficient." *Id.* at 62, 109 S.Ct. 2782.[17] Efficiency of the process would not be served, generally, by reducing the reorganization court's jurisdiction from that which referees could exercise under prior law.[18] Specifically, in the instant case, transfer of the Adversary, the very essence of the chapter 11 case, to the District Court for trial by jury would make no sense in the chapter 11 context, where responsibility for fixing deadlines under sections 365(d)(4) and 1121 of the Bankruptcy Code and making determinations under provisions such as sections 363, 1105 and 1112 remains the responsibility of the bankruptcy court. The intention of Congress and the commands of the Supreme Court are better served not by expanding a nondebtor's jury right to include that entity's claim to property of the estate but rather by recognizing the traditional, equitable power of the bankruptcy court to adjudicate controversies over interests in property in that court's custody.

## IV. Conclusion

■ In sum, the court concludes that disputes which are core to the case under 28 U.S.C. § 157(b)(2) and which could have been summarily disposed of under the former bankruptcy act are subject to its equity jurisdiction, and a party to such a dispute is not entitled to a jury trial. In the case at bar, the court has previously ruled the Adversary to be core. As the Adversary also clearly would have fallen within a referee's summary jurisdiction under the former bankruptcy act, Defendant is not entitled to a jury trial.

For the foregoing reasons, the Jury Motion is **GRANTED**.

---

**17.** *See also Katchen*, 382 U.S. at 329, 86 S.Ct. 467 (recognizing that a primary purpose of the bankruptcy laws is to secure the prompt, efficient, and inexpensive administration and settlement of the estate).

**18.** Indeed, if the bankruptcy court can exercise jurisdiction over the property in its possession only by consent of other parties claiming interest in that property, not only will efficiency be forfeited, but forum shopping and interposition of jury demands to delay proceedings will be encouraged.