**In re MIRANT CORPORATION, et al., Debtors.**

No. 03–46590.

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Sept. 29, 2004.

---

**39.** Response, Pl. 940; Amended Response of Gustavo A. Gutnisky, M.D., Pl. 973.

**40.** 4 *Collier on Bankruptcy,* ¶ 502.06[2][d] at pg. 502–60 n. 17.

Toby L. Gerber, John N. Schwartz, Fulbright & Jaworski L.L.P., Dallas, TX, William R. Greendyke, Fulbright & Jaworski L.L.P., Houston, TX, Barry N. Seidel, Edward G. Kehoe, King & Spalding LLP, New York City, for defendant.

Craig Averch, White & Case LLP, Miami, FL, Robin Eric Phelan, Haynes and Boone, Dallas, TX, Thomas Lauria, White & Case LLP, Miami, FL, for debtors.

Edward Weisfelner, Andrew Dash, Leslie Scharf, Brown, Rudnick, Berlack, Israels, LLP, New York City, Howard L. Siegel, Esq., Brown, Rudnick, Berlack, Israels, LLP, Hartford, CT, William Baldiga, Brown, Rudnick, Berlack, Israels, LLP, Boston, MA, Eric J. Taube, Mark Taylor, Hohmann, Taube & Summers, LLP, Austin, TX, for Official Committee of Equity Security Holders.

Paul Silverstein, Richard Baumfield, Andrews Kurth LLP, Fredric Sosnick, Scott Shelley, Sherman & Sterling, LLP, New York City, Jason Brookner, Monica Blacker, Andrews Kurth LLP, Dallas, TX, for Official Committee of Unsecured Creditors of Mirant Corporation.

### Memorandum Opinion and Order

DENNIS MICHAEL LYNN, Bankruptcy Judge.

Before the court is the Motion of Perryville Energy Partners LLC for Relief from the Automatic Stay to Initiate Arbitration (the "Motion") and the responses opposing the same filed by Debtors on behalf of Mirant Americas Energy Marketing, LP ("MAEM"), the Official Committee of Equity Security Holders (the "Equity Committee") and the Official Committee of Unsecured Creditors of Mirant Corporation (the "Mirant Committee"). The parties have submitted memoranda of authorities for the court's consideration. The court conducted a hearing on the Motion on September 1, 2004. The parties presented oral arguments and the court received into evidence a number of documents described as necessary below.

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334(a) and 157(b)(2)(G). This memorandum opinion comprises the court's findings of fact and conclusions of law. FED. R. BANKR.P. 7052 and 9014.

## I. Background

Debtors' business is principally the production, purchase, sale and trading of energy products. Debtors conduct their trading and marketing activities through MAEM.

Perryville Energy Partners LLC ("PEP") and MAEM entered into a Tolling Agreement dated April 30, 2001. Under the Tolling Agreement, MAEM was granted tolling rights to a power facility located near Perryville, Louisiana. MAEM's tolling rights included the exclusive right to supply natural gas to the power facility through December 31, 2022, which gas would be used to generate electricity for MAEM to sell in the wholesale electric energy market. In exchange for the tolling rights, MAEM agreed to make certain fixed and variable payments to PEP. The parties agreed to resolve disputes under the Tolling Agreement through arbitration.[1]

---

1. Section 20.1 of the Tolling Agreement provides, in part:

   In the event any dispute arises under this Agreement, such dispute shall be referred by each Party to a senior officer designated by Seller and a senior officer designated by Buyer for resolution upon five (5) Days' written notice from either Party. Any dispute that may arise in connection with this

On July 14, 2003, MAEM[2] filed for relief under chapter 11 of the Bankruptcy Code (the "Code").[3] MAEM continued operating under the Tolling Agreement through September 14, 2003. On August 28, 2003, Debtors filed a motion to reject the Tolling Agreement under 11 U.S.C. § 365(a). The Tolling Agreement was subsequently deemed rejected as of September 15, 2003 by court order.

On December 15, 2003, PEP filed Proof of Claim No. 6261 ("Claim 6261") against MAEM in the amount of $1,015,651,565.31. Claim 6261 seeks recovery for (1) damages allegedly suffered by PEP from MAEM's rejection of the Tolling Agreement and (2) other amounts allegedly owing to PEP under the Tolling Agreement. Debtors filed an objection to Claim 6261 on March 26, 2004.

On July 14, 2004, PEP filed the Motion requesting this court to modify the automatic stay to allow commencement of arbitration proceedings for quantification of Claim 6261.

## II. Discussion

The issues before the court are whether this court has the discretion to deny PEP's request to have an arbitrator quantify Claim 6261; and, if this court has such discretion, whether it should be exercised.

## A. The Court has Discretion to Deny PEP's Request for Arbitration

### 1. Federal Policy Favors Enforcement of Arbitration Agreements

■ The general rule is that a federal court must defer to contractually mandated arbitration unless the party opposing arbitration can show that its position is supported by a congressional command that supersedes the direction of the Federal Arbitration Act.[4] *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226–27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

PEP argues that this court lacks discretion to override the federal policy favoring enforcement of arbitration agreements and deny its request for arbitration. Debtors, the Equity Committee and the Mirant Committee urge that this court does have discretion to deny the request and, alternatively, that PEP waived its right to arbitration. Because the court finds that (1) it has discretion to deny PEP's request, and (2) such discretion should be exercised in this case, the court does not reach the waiver issue.

### 2. The *National Gypsum* Test

■ PEP's argument that this court must allow arbitration proceedings to quantify Claim 6261 is based on the ruling of the Court of Appeals for the Fifth Circuit in *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir.1997). In *Nat'l Gypsum*, the Fifth Circuit affirmed the decision of the bankruptcy court to deny enforcement of an arbitration agreement and applied a two-prong test for determining when a bankruptcy court should abstain from deciding a matter and defer to arbitration:

[W]e believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.*, whether the pro-

---

Agreement which can not be resolved . . . shall be settled by arbitration. . . .

**2.** Seventy-five of Debtors, including MAEM, filed petitions commencing July 14, 2003 and continuing through July 15, 2003. Eight more of Debtors have subsequently filed for

relief. Debtors' cases are being jointly administered.

**3.** 11 U.S.C. § 101–1330 (2004).

**4.** 9 U.S.C. § 1–307 (2004).

ceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code.

*Id.* at 1067. Under this test,[5] if the court determines that a proceeding does not derive exclusively from the Code, the court has no choice but to abstain and allow the parties to arbitrate the matter.[6] If the court finds the proceeding does derive exclusively from the Code, the court has the discretion to deny a request for arbitration if the court further determines that arbitration would conflict with the purposes of the Code.

■ In this case, the court must determine whether resolution of Debtors' objection to Claim 6261 is a proceeding deriving exclusively from the Code. If it is not, no consideration of the purposes of the Code will be necessary, as the court will be bound to grant the Motion. PEP argues that, notwithstanding the normal, centralized procedure for resolution of claim objections in the bankruptcy court pursuant to 28 U.S.C. § 157(b)(2)(B) and Code section 502(b), the quantification of Claim 6261 is a proceeding which does not derive exclusively from the Code but is rather a contractual dispute controlled by state law. MAEM, the Equity Committee and the Mirant Committee argue that quantification of Claim 6261 is a core proceeding and

that this court has discretion to refuse PEP's request for arbitration.

The court disagrees with PEP's interpretation of the first part of the *Nat'l Gypsum* test. PEP reads *Nat'l Gypsum* as requiring that the substantive issues raised in a claim objection derive exclusively from the Code before the bankruptcy court has any discretion to deny arbitration. While the substance of a dispute may be governed by law peculiar to bankruptcy, the court does not perceive the first part of the *Nat'l Gypsum* test to *require* that the *substantive* issues in dispute be derived from the Code. Many issues in bankruptcy cases arise under state law but *must* be subject to the bankruptcy court's jurisdiction for it to do its job. Issues of lien perfection or contractual cure amounts must be addressed under state law to decide whether a secured creditor should be granted relief from the stay or if a plan of reorganization should be confirmed, for example. The vast majority of claims in any bankruptcy case will be premised on or implicate state law, to one degree or another. *See Colvard v. Gulf States Drilling Co., Inc. (In re Bar M Petroleum Co., Inc.)*, 63 B.R. 343, 346 (Bankr.W.D.Tex.1986) (stating that the restructuring of debtor and creditor relations, which is at the core of the bankruptcy court's power, necessarily involves the

5. The parties seem to agree that the arbitration clause is "otherwise applicable." The court concurs. Though the Tolling Agreement has been rejected, that simply means it has been breached. *See Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511 (5th Cir.2004); *Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1083 (5th Cir.1994), *cert. denied sub nom. Sowashee Venture v. EB, Inc.*, 513 U.S. 874, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994); *O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines)*, 981 F.2d 1450, 1459 (5th Cir.1993). It remains otherwise in existence;

thus rejection does not alone prevent applicability of the arbitration clause.

6. Courts in other circuits have applied a less rigorous "core proceeding" test. *See Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 166 (2d Cir.2000); *Am. Freight Sys., Inc. v. Consumer Prods. Assocs. (In re Am. Freight Sys., Inc.)*, 164 B.R. 341, 347 (D.Kan.1994); *Sacred Heart Hosp. of Norristown v. Independence Blue Cross (In re Sacred Heart Hosp. of Norristown)*, 181 B.R. 195, 202 (Bankr. E.D.Pa.1995).

determination of creditors' claims, most of which "also are based on State law").

The court reads the *Nat'l Gypsum* test as met where, as with the claim process here, there is a procedure designed especially to meet the needs of bankruptcy.[7] The opinion of the Court of Appeals for the Fifth Circuit in *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir.1987) is instructive on this point. Though *Wood* is principally significant for its distinction between core matters and related matters (*see* 28 U.S.C. §§ 1334(b) and 157(b)), the Court of Appeals referred to the claim objection process as a paradigmatic example of core bankruptcy jurisdiction. The Court stated:

> A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it *could arise only*

*in the context of bankruptcy.* Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim.

*Id.* at 97 (internal citations omitted) (emphasis added). The Court's language would seem equally applicable in the case at bar. Only in bankruptcy court are there these peculiar, summary procedures for resolving claim objections. While the underlying rights at issue in the objection might be enforceable outside the bankruptcy context, different, unique procedures are utilized to resolve the claim in the bankruptcy court.

The allowance, disallowance and estimation of claims against Debtors are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B).[8] Section 502(b) of the Code also evidences Congress's intent to leave quantification of a claim to the bankruptcy court when a party in interest objects to the claim.[9] This procedure for

---

7. It is noteworthy that Claim 6261 exists solely because of Debtors' bankruptcy and their resulting ability to invoke Code § 365. Moreover, sections 365 and 502(g), not state law, are the bases of PEP's claim. Although the calculation of a rejection claim may depend largely on state law, limits (e.g., on enforcement of penalties under section 365(b)(2)(D)) set by Congress constrain the amount of the claim. It is a fairer characterization to say a rejection claim arises substantively under the Code which, in turn, incorporates state law than to say the claim arises other than from the Code.

8. Section 157(b)(2)(B) provides that:

> (b)(2) Core proceedings include, but are not limited to—
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of

confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

> The limited, discrete exception for tort claims (which are subject to the District Court's bankruptcy jurisdiction under 28 U.S.C. § 157(b)(5)) suggests Congressional intent that claim objections will, as a rule, be heard by the bankruptcy court.

9. Section 502(b) reads:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim ... in such amount ...
> 11 U.S.C. § 502(b).

liquidation of claims against a bankruptcy estate and their allowance and disallowance is at the very heart of the bankruptcy court's function and purpose.[10] This court does not therefore read *Nat'l Gypsum* as empowering parties to use an arbitration clause to divest the bankruptcy court of its generally pervasive authority to control quantification of claims merely because the substance of a claim objection is rooted in state law.[11]

PEP cites *In re Statewide Realty Co.*, 159 B.R. 719 (Bankr.D.N.J.1993) and *Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108 (S.D.N.Y.2001) in support of its position that this court lacks discretion to deny the Motion. Neither are these cases binding on the court nor are they persuasive. In each case, an objection to a claim was referred to arbitration not because the bankruptcy court lacked discretion to hear the objection, but because arbitration did not conflict with the purposes of the Code. *Winimo* (a case involving contract assumption) is also distinguishable because the underlying issue to be arbitrated was whether the debtor had breached a lease agreement, not the quantification of a

damage claim resulting from rejection of an executory contract.

During oral argument, PEP also pointed to this court's Memorandum Order entered in Mirant Americas Energy Marketing, L.P. v. Metromedia Energy, Inc., Adversary No. 03–4359 (the "Metromedia Adversary") as support for the proposition that this court must allow an arbitrator to quantify Claim 6261. This court's order in the Metromedia Adversary does not help PEP. The Metromedia Adversary was no more than an effort by MAEM to collect an account receivable in bankruptcy court by claiming the collection action was a turnover proceeding under Code section 542. The court clearly lacks jurisdiction to collect accounts receivable for a debtor. *Satelco, Inc. v. N. Am. Publishers, Inc. (In re Satelco, Inc.)*, 58 B.R. 781, 789 (Bankr.N.D.Tex.1986).

Claim 6261 was filed by PEP as a proof of claim. MAEM filed an objection to Claim 6261. The parties thus initiated the procedure for determination, allowance and disallowance of Claim 6261, which arises exclusively from the Code. The first prong of the *Nat'l Gypsum* test is met.

---

**10.** *See In re UAL Corp.*, 310 B.R. 373, 377 (Bankr.N.D.Ill.2004) ("It has long been recognized that one of the essential, 'core' functions of bankruptcy is the allowance or disallowance of claims against the debtor's estate, without regard to the source of the claim."); *United States v. Rhodey (In re R & W Enters.)*, 181 B.R. 624, 643 (Bankr.N.D.Fla.1994) ("The process of claim determination and payment is within the exclusive province of the bankruptcy court."); *In re Chateaugay Corp.*, 111 B.R. 67, 71 (Bankr.S.D.N.Y.1990) (recognizing that restructuring of debtor-creditor relations is at the core of bankruptcy court power and that the court has jurisdiction to allow, disallow, liquidate and estimate aspects of claims based on contract law); *In re Bar M Petroleum*, 63 B.R. at 346 ("By filing

a proof of claim, Defendant has become a party in interest ... and 11 U.S.C. § 502(b) requires the Court to determine the amount of a claim where the claim has been objected to."); *Lesser v. A–Z Assocs. (In re Lion Capital Group)*, 46 B.R. 850, 860 (Bankr.S.D.N.Y. 1985) ("Adjustment of claims against an estate has been and remains central to bankruptcy proceedings.").

**11.** As discussed below, PEP is one of many creditors that might invoke an arbitration clause to liquidate a claim in these cases. *Requiring* deferral to arbitration in the case at bar could effectively eliminate centralized resolution of claims in Debtors' cases.

## B. The Court Should Exercise its Discretion and Deny PEP's Request for Relief from the Stay to Initiate Arbitration

### 1. Quantification of Claim 6261 Through Arbitration Would Conflict with the Purposes of the Bankruptcy Code

Because the court finds that its quantification of Claim 6261 will occur through a proceeding that derives from the Code, the court now turns to the second part of the *Nat'l Gypsum* test. The court may exercise its discretion to deny PEP's request if arbitration would conflict with the purposes of the Code. *Nat'l Gypsum*, 118 F.3d at 1067. The Fifth Circuit in *Nat'l Gypsum* identified three such purposes[12] for this court to consider: (1) resolution of purely bankruptcy issues in a centralized forum; (2) protection of reorganizing debtors and creditors from piecemeal litigation; and (3) the bankruptcy court's unquestionable power to enforce its own orders. *Id.* at 1069.

Debtors are party to numerous agreements; Debtors have rejected some of these contracts already and will probably reject more. Many of these agreements contain arbitration provisions similar to those found in the Tolling Agreement.[13] Like the Tolling Agreement, quantification of claims based on Debtors' rejection of other agreements will typically implicate state law. Quantification of numerous claims against Debtors through multiple arbitration proceedings would conflict with the goal of the Code to provide a central forum for resolution of claims against Debtors.[14] Thus, the first factor identified in *Nat'l Gypsum* supports denial of PEP's request for arbitration.

Liquidation of numerous claims through various arbitration proceedings would also subject Debtors and creditors to piecemeal litigation. Protection against such piecemeal litigation is another of the three Code purposes *Nat'l Gypsum* specifically identifies, and consideration of this factor favors denial of PEP's request. And, "to permit various creditors to bypass carefully established procedures in order to force an unwilling debtor to litigate a number of actions in a number of forums merely because those creditors' contracts happen to

---

12. The purposes listed in *Nat'l Gypsum* are not exclusive, and the court does not read *Nat'l Gypsum* as limiting the court's consideration to only those factors enumerated.

13. In addition to the Tolling Agreement, this court has had occasion to consider other of Debtors' agreements in this case containing arbitration provisions. For example, MAEM is a signatory party to the Western Systems Power Pool Agreement (the "WSPPA"), which governs, *inter alia*, electric power sales in the Pacific Northwest. *See In re Mirant Corp.*, 303 B.R. 319, 321 (Bankr.N.D.Tex.2003). Many of Debtors' transactions and agreements, as was true in *Mirant*, were entered into subject to the WSPPA. As the WSPPA contains an arbitration clause (WSPPA, Section 34.2), and as many of these contracts may result in claims, the court could be inun-

dated by demands for resolution of those claims through arbitration.

14. *Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 103 (2d Cir.2004) (Congress intended for bankruptcy litigation to be centralized in a federal forum); *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir.1992) (Code policy favors centralized administration of claims in bankruptcy court); *Howell v. Ocwen Fed. Bank, FSB*, No. 00 C 3962, 2001 WL 1155255, *2, 2001 U.S. Dist. LEXIS 15710, *5 (N.D.Ill. Sept.28, 2001) (noting central purpose of bankruptcy code as adjudication of competing claims in one forum and one proceeding); *Knepp v. Credit Acceptance Corp. (In re Knepp)*, 229 B.R. 821, 844–45 (Bankr.N.D.Ala.1999) (Code policy is to provide one central forum for resolution of all disputes affecting administration of the estate).

include a standard arbitration clause" would jeopardize Debtors' resources because, "in such a world, the mere cost of defending ... various suits could deplete the corpus of substantial funds." *In re FRG*, 115 B.R. 72, 75 (E.D.Pa.1990).

In addition to the two Code purposes identified in *Nat'l Gypsum* discussed above, other central purposes of the Code would be frustrated if the court were to grant PEP's request. The Court of Appeals for the Fifth Circuit has identified the "expeditious and equitable distribution of the assets" of a debtor's estate as another purpose of the Code. *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 498 (5th Cir.2002). An important advantage of centralized determination of claims is the bankruptcy court's ability to coordinate the timing of that process with other aspects of a debtor's reorganization and ensure expeditious distribution to creditors. To submit Claim 6261 to arbitration would be contrary to this purpose.

Indeed, as noted above, in these chapter 11 cases many claims will be the consequence of rejection of a contract. Many of these contracts will include arbitration provisions. If the court grants the Motion, it would be bound to defer to arbitration for quantification of claims arising from such other contracts. The potential for numerous discrete arbitration proceedings quantifying claims against Debtors' estate would not only subject Debtors and creditors to piecemeal litigation, but would conflict with the purposes of the Code by robbing this court of its ability to deal with adjustment of the debtor-creditor relationship, another key function of the bankruptcy court.[15]

If quantification of numerous claims against Debtors were left to multiple arbitrators, the court would not only lose control over the timing of the process, but would be unable to ensure consistency in the quantification of claims of similarly situated creditors. The court can provide equality in treatment of similarly situated creditors by employing the same methods of claim quantification when warranted. Such equality cannot be guaranteed with multiple arbitrators quantifying various claims because separate arbitrators might adopt different methods or assumptions (e.g., in the case at bar, proper discount rate) for quantification of the same claim due to differences in experience, background and opinion. This would frustrate the Code policy of equal treatment of creditors.[16] Moreover, it would be demonstra-

---

**15.** The court's authority to preside over the claims process and supervise the adjustment of the debtor-creditor relationship is as much a necessary part of overseeing a reorganization case as is the *in rem* jurisdiction of the court. Indeed, recently in *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, ——, 124 S.Ct. 1905, 1911, 158 L.Ed.2d 764 (2004), the Supreme Court held the disposition of claims against a debtor to be an integral part of the bankruptcy court's *in rem* jurisdiction. This court has also previously identified the "reordering of the debtor-creditor relationship" as a "public right" exercised by the bankruptcy court through its equitable jurisdiction. *Brown v. Shepherd (In re Lorax Corp.)*, 307 B.R. 560, 566 (Bankr.N.D.Tex. 2004). In *Lorax*, this court denied a defendant's request to have a jury determine whether one of the debtor's leases terminated prepetition and stated that the "public regulatory scheme would be frustrated were Defendant able to use a claimed right to a jury to divest the reorganization court of its *in rem* authority." *Id.* This court's ability to effect this public regulatory scheme and reorder the debtor-creditor relationship in this case would be equally frustrated were PEP able to use a standard arbitration provision common in the power industry to divest this court of its *in rem* authority.

**16.** *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir.1991) (noting that equal treatment of unsecured creditors is one of the fundamental purposes of bankruptcy); *Morgan Guar. Trust Co. of New York v. Am. Sav. and Loan Ass'n,*

bly unfair to provide an alternative to the bankruptcy court for quantification of some—but not all [17]—rejection claims.

Quantification of Claim 6261 through arbitration may also result in inconsistent interpretations of the Tolling Agreement itself. PEP has filed four claims against Debtors separate from Claim 6261 but which arise under the Tolling Agreement.[18] Each of PEP's claims relate to payments allegedly due because of MAEM's non-performance of the Tolling Agreement. PEP acknowledges that Claim 6261 is the only one of its claims that is arguably subject to arbitration. Liquidation of its remaining claims will occur in this court. Granting the Motion could lead to contradictory interpretations of the Tolling Agreement by the court and an arbitrator,

which, in turn, could result in a quantification of Claim 6261 that is inconsistent with the quantification of PEP's other claims. The possibility of contradictory interpretations of a single agreement giving rise to multiple claims of a single creditor is inconsistent with the purposes of the Code.

Allowing arbitration to quantify Claim 6261 would also preclude parties in interest, other than MAEM and PEP, from being heard in the dispute. MAEM initiated a contested matter under Rule 9014(a) of the Federal Rules of Bankruptcy Procedure when it objected to Claim 6261.[19] Pursuant to section 1109(b) of the Code, any party in interest is entitled to be heard in the resolution of this contested matter.[20]

804 F.2d 1487, 1496 (9th Cir.1986) ("[O]ne of the primary goals of the bankruptcy laws is to provide for equality of treatment among creditors."); *Vaughan v. Kerry Steel, Inc. (In re Ottawa River Steel Co.)*, No. 02–3073, 2003 Bankr.LEXIS 1657, *7 (Bankr.N.D. Ohio May 13, 2003) ("One of the primary goals of the Bankruptcy Code is to ensure the equal treatment of similarly situated creditors."); *Heard v. City Water Bd. (In re Heard)*, 84 B.R. 454, 457 (Bankr.W.D.Tex.1987) ("Philosophically, the substantive goals of the bankruptcy process are fair and equitable treatment of creditors among themselves (equality of distribution), and a fresh start for the individual debtor. . . ."); *Baddin v. Olson (In re Olson)*, 66 B.R. 687, 694 (Bankr.D.Minn.1986) (stating that a general goal of bankruptcy is equality in treatment of similarly situated creditors' claims).

**17.** Though arbitration provisions are common in the agreements entered into by Debtors, some such contracts do not provide for arbitration. For example, MAEM's swap agreement with MediaNews Group (*see* Memorandum Opinion entered September 1, 2004) was not subject to arbitration.

**18.** On November 7, 2003, PEP filed its Motion of Perryville Energy Partners LLC for Allowance and Immediate Payment of Administrative Expense (the "Administrative Expense Motion"). The Administrative Expense

Motion requests payment of over $7 million allegedly owed to PEP under the Tolling Agreement for the period between MAEM's bankruptcy filing and rejection of the Tolling Agreement. On December 15, 2003, PEP filed Proofs of Claim Nos. 6262, 6263 and 6264 in an aggregate amount of approximately $375 million. These claims relate to guaranties of MAEM's obligations under the Tolling Agreement executed by Debtors Mirant Americas Inc. and Mirant Corporation.

**19.** *See IRS v. Taylor (In re Taylor)*, 132 F.3d 256, 260 (5th Cir.1998) ("An objection to a proof of claim serves to initiate a contested matter. . . ."); *In re Wotkyns*, 274 B.R. 690, 693 n. 2 (Bankr.S.D.Tex.2002); *In re Farmland Indus., Inc.*, 305 B.R. 490, 493 (Bankr. W.D.Mo.2003); 9 COLLIER ON BANKRUPTCY ¶ 3007.01[1] (15th ed. rev.2001).

**20.** Section 1109(b) provides that:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). It is not uncommon for a committee in a chapter 11 case to assume the responsibility for some claim objections. If PEP is correct, arbitration in

The Mirant Committee and the Equity Committee filed separate responses objecting to PEP's Motion, and counsel for the Equity Committee participated in oral argument at the hearing on the Motion. The Mirant Committee, Equity Committee and any other party in interest not a party to the Tolling Agreement cannot be compelled to take part in arbitration proceedings. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (finding that while the FAA requires arbitration agreements to be given the same weight as other contracts, it does not require parties to arbitrate absent agreement to do so). If the court were to defer to arbitration proceedings for quantification of Claim 6261, the court would effectively eliminate the Code-created rights of parties in interest, other than MAEM and PEP, to appear and be heard regarding quantification of Claim 6261. It goes without saying that to prevent a party from exercising rights expressly granted by the Code would contradict the purposes of the Code.

The size of Claim 6261 also counsels against allowing arbitration proceedings to quantify it. MAEM's Summary of Schedules reflects total liabilities of just over $700 million and Mirant Corporation's Summary of Schedules reflects total liabilities of just under $5 billion. Claim 6261, as filed, exceeds MAEM's scheduled liabilities and equals roughly 20% of Mirant Corporation's scheduled liabilities. PEP asserts that it will ultimately be entitled to less than half the face amount of Claim 6261 after its damages are discounted to present value. Assuming this to be true, Claim 6261 will still represent one of the most substantial claims against Debtors and may have considerable impact on the

the instant case could have been avoided by the simple expedient of causing a committee to initiate the claim objection. It would

Debtors' reorganization. To cede the court's authority to an arbitrator to quantify one of the most substantial claims in this case would frustrate this court's reordering of the debtor-creditor relationship and would hinder its control of the reorganization process.

### 2. Caselaw Does Not Favor Quantification of Claim 6261 Through Arbitration in this Case

The authorities relied on by PEP not only do not support the proposition that the court lacks discretion to deny the Motion, i.e. those authorities likewise do not support a finding that the court should decline to exercise such discretion. It is true that the *Statewide Realty* court deferred to arbitration to quantify a contract rejection claim, but there the court did so because "[t]he [confirmed] Plan provides that unsecured creditors will receive a dividend of 15%. The dividend to be paid will not be affected by the amount of the claims in the unsecured creditor class. Thus, the amount of the dividend does not depend on resolution of the [rejection claim]." *Statewide Realty*, 159 B.R. at 721. The court also noted that the debtor's former partners were already involved in arbitration with the creditor, and that "addition of the Debtor to the proceeding will enable all claims to be resolved in the same forum." *Id.* at 724. Unlike the creditor's claim in *Statewide Realty*, Claim 6261 may have a substantial impact on the return to Debtors' creditors and interest owners and the substance of Debtors' reorganization. And because PEP has filed four other claims which will be quantified in this court, quantification of Claim 6261 through arbitration would not achieve the

be anomalous to cause this court's jurisdiction to depend on the party that files an objection to a claim.

efficiencies of resolution of a creditor's multiple claims arising from a single contract in one forum, as was the case in *Statewide Realty*.

The District Court's reasoning in *Winimo* for reversing the bankruptcy court's decision to deny arbitration is equally unhelpful to PEP. In *Winimo*, the District Court found that the bankruptcy court should not have denied arbitration because the bankruptcy court failed to "explain how arbitration ... would adversely affect the administration of [debtor's] estate or conflict with Bankruptcy Code policy." *Winimo*, 270 B.R. at 124. Indeed, the only conflict with Code policy mentioned by the bankruptcy court was that the delay that might result from arbitration would conflict with expeditious estate administration. The District Court found the bankruptcy court's delay argument unpersuasive because substantial delay in the matter was caused by the Bankruptcy Court itself and "where most of the delay is attributable to the Bankruptcy Court, that court cannot then use that delay as justification for overriding the strong federal policy in favor of arbitration." *Id.* at

125. Thus, the decision of the District Court in *Winimo* turns on the failure of the bankruptcy court to provide any explanation of how arbitration proceedings would conflict with the purpose of the Code.

This court's holding in the Metromedia Adversary, in addition to being inapplicable to the case at bar for the reasons stated above, does not support a finding that the court should refuse to exercise its discretion. The Metromedia Adversary involved a relatively small claim, and this court questioned whether the amount in dispute could possibly impair Debtors' reorganization process, even if arbitration proved time-consuming. Given the size of Claim 6261 and the potential consequences of granting the Motion, this court's ruling in the Metromedia Adversary is not pertinent to determination of the matter before the court.

The court has reviewed a number of cases not cited by the parties where liquidation of claims against a debtor was referred to arbitration. Each such case is distinguishable.[21] The court has also

21. *Pardo v. Akai Elec. Co. Ltd. (In re Singer Co. N.V.)*, No. 00 Civ. 6793, 2001 WL 984678, *6, 2001 U.S. Dist. LEXIS 12902, *19–20 (S.D.N.Y. Aug. 27, 2001) (deferring to arbitration for resolution of issues involved in adversary proceeding because resolution by arbitrator would not affect allocation of estate assets and debtor's plan of reorganization was already confirmed); *Mustad & Sons, A/S v. Seawest Indus., Inc. (In re Seawest Indus., Inc.)*, 73 B.R. 946, 949 (W.D.Wash. 1987) (reversing bankruptcy court and deferring to arbitration in Norway to resolve debtor's *counterclaims* against claimant because federal policy supports enforcement of arbitration agreements, particularly in the international context); *Mor–Ben Ins. Mkts. Corp. v. Trident Gen. Ins. Co., Ltd. (In re Mor–Ben Ins. Mkts. Corp.)*, 73 B.R. 644, 647 (9th Cir. BAP 1987) (affirming bankruptcy court's deferral to arbitration for resolution of claim objection and various adversary proceedings where the principal place of business of each

claimant or defendant was London, arbitration clause required arbitration to occur in London, and because special weight should be given to arbitration agreements in the international context); *In re Farmland Indus., Inc.*, 309 B.R. 14, 20–21 (Bankr.W.D.Mo. 2004) (granting claimant's request for relief from stay to initiate arbitration of a claim objection where claim alleged breach of a non-executory contract, debtor had initiated arbitration proceedings prior to filing bankruptcy and impact of arbitration on Code policies of centralized claim resolution and prohibition of piecemeal litigation would be minimal); *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 205 (Bankr.S.D.N.Y.2002) (deferring to arbitration for resolution of *counterclaims* raised in claim objection because arbitration would not conflict with any Code policy); *Weinstock v. Frank (In re Weinstock)*, No. 96–31147DWS, 1999 WL 342764, *9, 1999

found cases in which a request for arbitration was denied because to do so would have frustrated the purposes of the Code.[22] What the court's research has not uncovered is any precedent, binding or otherwise, that suggests, let alone dictates, a result different than that reached by the court in the case at bar.

### III. Conclusion

For the foregoing reasons, the Motion must be, and is, DENIED. Each party shall bear its own costs.

It is so ORDERED.

Bankr.LEXIS 616, *31–32 (Bankr.E.D.Pa. May 25, 1999) (deferring to arbitration for resolution of adversary proceeding where debtor failed to demonstrate that arbitration would jeopardize any Code policy, arbitration appeared to be the most efficient forum for resolution of dispute and arbitration would not impede confirmation of debtor's plan); *Hupp Indus., Inc. v. Envtl. Prods. Amalgamated Pty., Inc. (In re Hupp Indus., Inc.),* 157 B.R. 360, 362–63 (Bankr.N.D.Ohio 1993) (deferring to arbitration of disputes involving Australian corporation because underlying action was essentially a noncore breach of contract action, arbitration would not jeopardize Code objectives and federal policy favoring arbitration is given special weight in the context of international commerce); *In re Bicoastal Corp.,* 111 B.R. 999, 1002–03 (Bankr.M.D.Fla.1990) (deferring to arbitration for resolution of dispute where resolution in arbitration would require no discovery or witnesses, arbitration would result in less expense being incurred than if a claim objection was litigated in the bankruptcy court and arbitration would expedite rather than delay debtor's reorganization).

**22.** *Caldor Corp. v. S Plaza Assocs., L.P. (In re Caldor, Inc.-NY),* 217 B.R. 121, 130 (Bankr. S.D.N.Y.1998) (refusing to order arbitration of debtor's claims against lessor where such claims implicated important aspects of the Code and significant assets of the bankruptcy estate); *In re Day,* 208 B.R. 358, 369–70 (Bankr.E.D.Pa.1997) (stating that the claims allowance process is among the most fundamentally core of any contested matter and refusing to defer to arbitration for resolution of debtor's claim objection where arbitration proceedings would substantially delay confirmation of debtor's plan of reorganization); *In re Springer–Penguin, Inc.,* 74 B.R. 879, 884–85 (Bankr.S.D.N.Y.1987) (enjoining Yugoslavian entity from pursuing claims against debtor in arbitration proceedings in Yugoslavia because federal policy favors resolution of claims against debtors in the bankruptcy court, the dispute could be expeditiously resolved in the bankruptcy court and creditors' interests in the bankruptcy estate could be protected by resolving the dispute in the bankruptcy court).