**In re DAISYTEK, INCORPORATED, et al., Debtors.**

**Ernst & Young, LLP, Appellant,**

v.

**J. Gregg Pritchard, Trustee, Appellee.**

Civ.A. No. 3:05CV0008–D.
Bankruptcy No.03–34762–HDH–11.

United States District Court,
N.D. Texas,
Dallas Division.

April 11, 2005.

Rod Phelan, Robb L. Voyles, and Gavin R. Villareal of Baker Botts, L.L.P., Dallas, TX, for Appellant.

Scott M. DeWolf, Sean J. McCaffity, Diamond McCarthy Taylor Finley Bryant & Lee, Dallas, TX, for Appellee.

FITZWATER, District Judge.

In this appeal from a bankruptcy court order authorizing a post-confirmation creditors' trust to conduct a Fed. R. Bank. P.2004 examination, the court must decide whether the bankruptcy court erred when it authorized the examination without ade-

quately considering whether to give effect to contractual arbitration clauses that restrict discovery. Concluding that it did, the court vacates the order and remands for further proceedings.

## I

In 2003 several related companies (collectively, "Daisytek") filed chapter 11 bankruptcy petitions. In March 2004 the bankruptcy court confirmed Daisytek's First Amended Joint Plan of Liquidation ("Plan"),[1] which approved a Creditors' Trust Agreement that created the D.I.C. Creditors' Trust ("Trust"). The Trust consists of Daisytek assets, such as claims or causes of action that Daisytek may have had. Its beneficiaries are Class 5 general unsecured creditors of the Daisytek bankruptcy estate ("Estate") and their assignees, and each is entitled to a pro rata share of any distributions from the Trust.[2] Under the terms of the Plan, their claims against the Estate were extinguished, and the Estate ceased to exist. Appellee J. Gregg Pritchard ("Trustee") is the appointed Trustee of the Trust. He is authorized under the relevant documents to investigate, sue upon, mediate, arbitrate, and/or compromise and settle claims and causes of action that are Trust assets. The Trustee is required to collect, conserve, protect, and liquidate all assets of the Trust, and he may exercise control over assets and the management of the Trust business. He is also responsible for asserting claims objections and for making distributions to Trust beneficiaries.

In November 2004 the Trustee filed a motion for Rule 2004 examination of custodian of records for Ernst & Young.[3] He advised the bankruptcy court that he was investigating any facts that might exist that would possibly support future claims against Ernst & Young, such as for accounting malpractice. Ernst & Young objected to the motion, and, following a hearing, the bankruptcy court granted it. In its memorandum opinion,[4] the court reasoned, first, that Rule 2004 was a "broad and powerful provision," and, so long as "the proposed examination relates to the acts, conduct or property, or to the liabilities and financial condition of the Debtors, such examination is proper under the rule." R. 7. It concluded that Ernst & Young served as Daisytek's auditor before the bankruptcy case was filed, and the information the Trustee sought was "with-

---

1. The Plan excluded one entity that filed for chapter 11 relief.

2. Class 4 convenience claim creditors opted to relinquish their rights to participate voluntarily as Class 5 claimants.

3. Rule 2004(a) and (b) provide:

 (a) Examination on motion.
 On motion of any party in interest, the court may order the examination of any entity.
 (b) Scope of examination.
 The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the

 debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

4. At the conclusion of the hearing, the bankruptcy court granted the Trustee's motion. It set out its reasoning in a memorandum opinion filed after the hearing.

in the scope of Rule 2004." *Id.* at 8. The court held, second, that the Trustee had not indicated whether he intended to sue Ernst & Young, that his counsel "candidly stated in court that the Trustee is only in the investigation stage," and that "[a]ny claims of the Debtors or the Estate against [Ernst & Young] would necessarily be pre-petition claims which devolve under the plan to the Trustee for prosecution." *Id.* The bankruptcy court concluded, third, that the arbitration clauses in engagement agreements between Daisytek's parent and its subsidiaries and Ernst & Young could not "trump the rights and powers of the Trustee to do his job under the plan, utilizing all of the powers of the Code and the Federal Rules of Bankruptcy Procedure, including Rule 2004." *Id.* The court also held that the arbitration clauses did not appear to apply, because they pertained to controversies or claims related to the services of Ernst & Young to Daisytek, and there was then no such controversy or claim. Assuming that the clauses would bind the Trustee and were apposite, the court held that they did not supersede the Trustee's authority under the Plan and the Bankruptcy Code to investigate Daisytek's affairs under Rule 2004, because to hold otherwise would impact the rights of every creditor in the proceedings.

Ernst & Young filed a notice of appeal, and, conceding the possibility that the bankruptcy court order could be deemed non-appealable, sought leave to appeal.[5] The Trustee served a subpoena on Ernst & Young that required that it produce documents and a records custodian.

Ernst & Young filed objections to the Trustee's requests, and the Trustee moved the bankruptcy court to compel production of the documents and testimony. After the bankruptcy court granted the motion, Ernst & Young applied for, and this court granted, stays of the bankruptcy court orders. The court also accelerated the appeal.

■ Ernst & Young maintains that the bankruptcy court erred in permitting the Trustee to take a pre-suit deposition. It argues that the order enables the Trustee to circumvent limits on such discovery contained in Fed.R.Civ.P. 27. Ernst & Young also posits that the order allows the Trustee to avoid arbitration provisions included in engagement agreements that Ernst & Young entered into with Daisytek to audit and report on consolidated financial statements, under which the arbitrators are to determine the scope of discovery. It contends the bankruptcy court lacked jurisdiction to enter the order because it does not relate to the administration of the Estate, the Rule 2004 examination was to be conducted after Plan confirmation and substantial consummation, and it was to be taken by a post-confirmation party (the Trustee) pursuing possible claims against a non-debtor, independent of bankruptcy court oversight and on behalf of private potential litigants (the Trust beneficiaries) who are no longer creditors of the Estate.[6]

The Trustee responds that Ernst & Young's appeal rests on the mistaken premise that the Trustee seeks only to

---

5. The court need not decide whether the order is appealable. Assuming *arguendo* that it is not, the court grants Ernst & Young's motion for leave to appeal and exercises appellate jurisdiction under 28 U.S.C. § 158(a)(3).

6. Ernst & Young also maintains that the proposed Rule 2004 examination exceeds the post-confirmation scope of Rule 2004(b). The

court holds that this argument was not raised in the bankruptcy court and therefore not preserved for appeal. *See, e.g., In re GGM, P.C.,* 1998 WL 223706, at *3 n. 3 (N.D.Tex. Apr.29, 1998) (Fitzwater, J.) (citing *Williams v. Plumbers and Steamfitters Local 60 Pension Plan,* 48 F.3d 923, 925 (5th Cir.1995)), *aff'd,* 165 F.3d 1026 (5th Cir.1999).

invoke the Rule 2004 procedure to enable him to bring state-law accounting malpractice claims against Ernst & Young. He maintains that he seeks to conduct a Rule 2004 examination to determine the nature and extent of any prepetition claims that may exist and that were transferred to the Trust at Plan confirmation, including core claims for preferences or fraudulent transfers under 11 U.S.C. §§ 547 and 548. Although he acknowledges that these causes of action may include state-law claims against directors, officers, lawyers, and even Ernst & Young, he states that he has not completed his investigation and does not yet know the full scope of any prepetition claims. The Trustee reasons that, although Ernst & Young is the subject of the examination, the knowledge to be derived from its work papers will be used in all aspects of his investigation and in an ongoing claims-objection process established by the Trust Agreement. He maintains that, assuming Ernst & Young's reliance on the arbitration clauses in the engagement agreements is ripe, a Rule 2004 examination does not interfere with its contractual arbitration rights, because the plain language of the clauses does not restrict presuit discovery, and, because the Trustee may ultimately bring core claims against Ernst & Young, there is a strong likelihood that the clauses would never be enforced. .

## II

■ Ernst & Young contends the bankruptcy court lacked post-confirmation jurisdiction to order the Rule 2004 examination. The Trustee points to the Plan's retention-of-jurisdiction provisions to argue that the court acted within its jurisdiction. This court reviews *de novo* whether the bankruptcy court had subject matter jurisdiction to authorize the Rule 2004 examination. *See In re REPH Acquisition Co.*, 134 B.R. 194, 202 (N.D.Tex.1991) (Fitzwater, J.) (holding that question whether bankruptcy court has subject matter jurisdiction is one of law reviewed *de novo*).

■ "[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir.2002) (quoting *United States Tr. v. Gryphon at the Stone Mansion, Inc.*, 216 B.R. 764, 769 (W.D.Pa. 1997), *aff'd*, 166 F.3d 552 (3d Cir.1999)). Once the debtor's plan has been confirmed, the bankruptcy court's jurisdiction is narrowed. At that point, bankruptcy court jurisdiction "ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir.2001).

■ Pursuant to 11 U.S.C. § 1123(b)(3)(B), the Plan created the Trust. Under the Plan and the Trust Agreement, the Trustee has rights, powers, and duties to investigate and sue upon causes of action transferred from Daisytek, pursue avoidance actions, and object to claims he believes should not be allowed. These are prepetition claims that are preserved under the Plan and assigned to the Trust for prosecution. Any amounts obtained by the Trustee are to be added to the Trust for distribution to creditors according to the terms of the Plan. Because the claims the Trustee intends to prosecute deal with Daisytek's prepetition relationship with the entities in question (including Ernst & Young), the Plan contemplates the prosecution of the claims and the distribution of Daisytek's share of any recovery to creditors under the Plan, and the prosecution of the claims will thus

impact compliance with, or completion of, the Plan, the *Craig's Stores* test for post-confirmation jurisdiction is satisfied. *See In re Coho Energy, Inc.*, 309 B.R. 217, 221 (Bankr.N.D.Tex.2004). The Trustee seeks the Rule 2004 examination to carry out his duties under the Plan, and the bankruptcy court possessed the jurisdiction to authorize it.[7]

### III

Ernst & Young argues that Rule 2004 does not overcome its right to restrict discovery as provided in arbitration clauses contained in the engagement agreements, which require that all disputes must be mediated or arbitrated. The arbitration provisions preclude discovery unless "authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery." R. 268. Ernst & Young contends the bankruptcy court's decision to permit a Rule 2004 examination impermissibly invalidates its right to arbitrate the Trustee's professional malpractice claim with restricted discovery approved by the arbitrators.

 This court reviews *de novo* whether the bankruptcy court was obligated to give effect to the arbitration clauses in the engagement agreements. *See In re Gandy*, 299 F.3d 489, 494 (5th Cir.2002) ("Whether a bankruptcy court has discretion to deny a motion to stay a bankruptcy proceeding pending arbitration is a question of law that we review *de novo.*" (citing *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1064 (5th Cir.1997))). "If ... the bankruptcy court had discretion to assess whether arbitration would be consistent with the Bankruptcy Code, the exercise of that discretion is reviewable only for

abuse." *Id.* (citing *In re United States Lines, Inc.*, 197 F.3d 631, 640–41 (2d Cir. 1999)). Provided the bankruptcy court correctly concluded that it had the authority to permit a Rule 2004 examination, the decision to allow the examination is also reviewed for abuse of discretion. *See Snyder v. Society Bank*, 181 B.R. 40, 42 (S.D.Tex.1994) (affirming bankruptcy court denial of Rule 2004 examination on ground that decision was not an abuse of discretion), *aff'd sub nom. In re Snyder*, 52 F.3d 1067 (5th Cir.1995) (unpublished table decision).

The bankruptcy court held that the arbitration provisions in the engagement agreements do not prevent the Rule 2004 examination. It noted the powerful nature of Rule 2004 and concluded the arbitration clauses could not "trump the rights and powers of the Trustee to do his job under the plan, utilizing all of the powers of the Code and the Federal Rules of Bankruptcy Procedure, including Rule 2004." R. 8. This reasoning fails to recognize the bankruptcy court's obligation in certain circumstances to give effect to arbitration agreements.

 When determining whether a matter in bankruptcy must be submitted to arbitration, the court looks to the nature of the underlying proceeding. *See Nat'l Gypsum*, 118 F.3d at 1067 ("[W]e believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.*, whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code."). If the proceeding derives solely from the provisions of the

---

7. Ernst & Young does not raise on appeal the question of bankruptcy court abstention from hearing an action by the Trustee against Ernst & Young. The court therefore has no occasion to consider whether the possibility that the bankruptcy court would abstain from such an action impacts its decision to allow a Rule 2004 examination.

Bankruptcy Code, and arbitration of the proceeding would conflict with the purposes of the Code, the bankruptcy court has discretion to refuse enforcement of a provision requiring arbitration. *Gandy,* 299 F.3d at 495 ("A bankruptcy court does possess discretion, however, to refuse to enforce an otherwise applicable arbitration agreement when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purpose of the Code."). "Under [the *National Gypsum*] test, if the court determines that a proceeding does not derive exclusively from the Code, the court has no choice but to abstain and allow the parties to arbitrate the matter." *In re Mirant Corp.,* 316 B.R. 234, 238 (Bankr. N.D.Tex.2004) (footnotes omitted).

▇▇▇▇ As a threshold matter, the court rejects the premise that the Rule 2004 examination itself is the proceeding that is the focus of this inquiry. Rule 2004 is a procedural device that enables a party in interest to examine any entity to obtain information about the debtor's financial condition, matters that may affect the administration of the debtor's estate, right to a discharge, or operation of a business and the desirability of its continuance, sources of, and consideration for, money or property to consummate a plan, and other matters relevant to the case or formulation of a plan. *See* Rule 2004(b). A proceeding within the meaning of *National Gypsum* is more than a discovery device; it is a procedural mechanism that enables one to obtain some form of remedy or other relief. Examples of such mechanisms are motions to lift the automatic stay, *see Nat'l Gypsum,* 118 F.3d at 1068–69, adversary proceedings, *see Gandy,* 299 F.3d at 491, 495–96, and claim quantification, *see Mirant,* 316 B.R. at 239–40. Thus regardless whether a Rule 2004 examination can only

occur within the context of bankruptcy and only pursuant to a bankruptcy court order, and whether information obtained during the examination may enable a litigant then to employ a procedural tool for obtaining a remedy or other relief, it is not the proceeding that the court examines in applying the *National Gypsum* test.

The proper focus is on the underlying nature of the proceedings that could flow from the information obtained through the Rule 2004 examination. In this case, there are at least two types of claims that the Trustee desires to develop and two categories of proceedings. He seeks to investigate the possibility of bringing a state-law audit malpractice claim based on Ernst & Young's prepetition conduct as Daisytek's auditor. This cause of action need not be asserted in a proceeding that derives solely from the provisions of the Bankruptcy Code. It is a claim that arises under state law and can be brought in a forum other than the bankruptcy court. *Cf. WRT Creditors Liquidation Trust v. C.I.B.C Oppenheimer Corp.,* 75 F.Supp.2d 596, 609 (S.D.Tex.1999) ("A number of courts have examined whether state law causes of action that arise from pre-petition … conduct are 'core' proceedings…. Cases since [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982),] have emphasized that a state law … tort action that is not based on any right created by the federal bankruptcy law, and that could arise outside the context of bankruptcy, is not a core proceeding."). Under *National Gypsum* the bankruptcy court must decide whether to give effect to an arbitration clause that governs the adjudication of such a claim.

The Trustee also seeks to examine Ernst & Young to discover whether he may pursue actions for preferential or fraudulent transfers against Ernst &

Young or other parties. Actions to avoid preferential and fraudulent transfers under 11 U.S.C. §§ 547 and 548 derive exclusively from the Bankruptcy Code. If the bankruptcy court concludes that arbitration of these claims would conflict with the purposes of the Code, it may in its discretion refuse to enforce an otherwise-applicable arbitration agreement.

▮ The bankruptcy court did not distinguish between the disparate types of proceedings in its decision overruling Ernst & Young's objection to the examination. It therefore erred when it concluded that the Trustee's ability to examine Ernst & Young pursuant to Rule 2004 supersedes the discovery limitations of the arbitration clauses, without considering the underlying nature of the proceedings.[8] On remand, the bankruptcy court must determine the extent to which the proceedings the Trustee intends to initiate derive exclusively from the provisions of the Bankruptcy Code. Concerning a proceeding that does not—e.g., a state-law accounting malpractice claim based on prepetition conduct—the court must give effect to the terms of any applicable arbitration clauses in the engagement agreements. As to one that does—e.g., a preference claim—the court must determine whether an arbitration agreement applies to the proceeding and, if it does, it may in its discretion refuse to enforce the agreement if arbitration would conflict with the purposes of the Code. The bankruptcy court may authorize the Trustee to conduct a Rule 2004 examination of Ernst & Young that pertains to a proceeding that is not subject to arbitration.[9]

\* \* \* \* \* \*

The bankruptcy court's December 3, 2004 order granting creditor trustee's motion for Rule 2004 examination of custodian of records for Ernst & Young LLP is VACATED,[10] and this matter is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.[11]

---

**8.** The bankruptcy court also questioned in its memorandum opinion whether the arbitration clauses apply because there is no "controversy or claim." R. 8. To the extent the court is suggesting that the clauses afford Ernst & Young no protection from discovery before the initiation of formal arbitration proceedings, its interpretation appears to misread the clauses, and it should reconsider this interpretation if it is material to its decision on remand.

**9.** If the examination is permissible under Rule 2004 but overlaps with discovery that would be constricted by an arbitration clause, the bankruptcy court retains the discretion to decide what limits, if any, should be placed on such dual-purpose discovery.

**10.** The bankruptcy court granted the Trustee's motion to compel after Ernst & Young brought this appeal. This court's decision vacating the bankruptcy court's December 3, 2004 order necessarily invalidates the February 16, 2005 order granting the Trustee's motion to compel.

**11.** Following oral argument, Ernst & Young submitted a letter that included a request to supplement the record. This request is denied.